# EXHIBIT 1

Protect Democracy PROJECT

VIA E-MAIL

Mark Bittner, Director, FOIA & Transparency
Department of the Treasury
1500 Pennsylvania Ave., N.W.
Washington, D.C. 20220
foiapl@treasury.gov

October 22, 2025

Re: Freedom of Information Act Request for Department of the Treasury Materials Related to the Investigation of Philanthropic and Nonprofit Organizations

Dear Mr. Bittner,

Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, Protect Democracy Project hereby requests that your office produce the following records within 20 business days:

1. From September 22, 2025, through the date on which searches are conducted for records responsive to this request:

    a. **All agency guidance, directives, memoranda, documents, or communications issued to or by the Department of the Treasury regarding the implementation of President Trump's September 22, 2025 Executive Order, "Designating Antifa as a Domestic Terrorist Organization" and/or National Security Presidential Memorandum 7, "Countering Domestic Terrorism and Organized Political Violence" ("NSPM-7").** This includes, but is not limited to, any documents or communications identifying any philanthropic or nonprofit organization for designation as a "domestic terrorist organization[.]"[1]

    b. **All directives, memoranda, lists, documents, or communications, and any related calendar entries or call logs, instructing Department of the Treasury officials or staff to investigate or to draft or develop plans to investigate:**

        i. The Open Society Foundations and any of its grantees, including but not limited to the directive referenced in the September 25, 2025 article in the *New York Times* entitled "Justice Dept. Official Pushes Prosecutors to

[1] *See* Executive Order, "Designating Antifa as a Domestic Terrorist Organization," (Sept. 22, 2025) ("September 22, 2025 Executive Order"), https://tinyurl.com/3vp9mc4m, Section 2 ("Designation as a Domestic Terrorist Organization"); National Security Presidential Memorandum 7, "Countering Domestic Terrorism and Organized Political Violence," (Sept. 25, 2025) ("NSPM-7"), https://tinyurl.com/5n6vbwy8, Section 2 ("Investigating Domestic Terrorist Organizations"), Section 3 ("Department of Justice Designation").

Investigate George Soros's Foundation,"[2] and any and all other directives, memoranda, or communications in any way related to that directive;

ii. Tides Foundation and any of its grantees;[3] and

iii. Arabella Advisors and any of its grantees.[4]

c. **All directives, memoranda, lists, documents, or communications, and any related calendar entries or call logs, instructing Department of the Treasury officials or staff to investigate or to draft or develop plans to investigate or audit philanthropic or nonprofit organizations:**

i. Pursuant to any directive implementing President Trump's September 22, 2025 Executive Order and/or NSPM-7;

ii. In connection with alleged ties to, or support for, any of the following:

1. "Antifa,"[5]

2. "[A]nti-fascism,"[6]

3. "[D]omestic terrorist organizations,"[7]

4. "[O]rganized campaigns" of "political violence" and "targeted intimidation, radicalization, threats, and violence,"[8] and/or

---

[2] Devlin Barrett, *Justice Dept. Official Pushes Prosecutors to Investigate George Soros's Foundation*, The New York Times (Sep. 25, 2025), https://tinyurl.com/bdfdca4h ("A senior Justice Department official has instructed more than a half dozen U.S. attorney's offices to draft plans to investigate a group funded by George Soros, the billionaire Democratic donor whom President Trump has demanded be thrown in jail. ***The official's directive, a copy of which was viewed by The New York Times***, goes as far as to list possible charges prosecutors could file, ranging from arson to material support of terrorism.") (emphasis added).

[3] President Trump Participates in a Roundtable on Antifa, Whitehouse.gov (October 8, 2025) https://tinyurl.com/ypdmwd4a at 53:08 (participant suggesting investigations into "the Arabella Funding Network, the Tides Funding Network, Neville Roy Singham and his network").

[4] *Id*.

[5] September 22, 2025 Executive Order ("Individuals associated with and acting on behalf of Antifa further coordinate with other organizations and entities for the purpose of spreading, fomenting, and advancing political violence and suppressing lawful political speech. This organized effort designed to achieve policy objectives by coercion and intimidation is domestic terrorism.").

[6] NSPM-7 ("There are common recurrent motivations and indicia uniting this pattern of violent and terroristic activities under the umbrella of self-described 'anti-fascism.'").

[7] September 22, 2025 Executive Order ("designat[ing] Antifa as a 'domestic terrorist organization.'").

[8] NSPM-7 ("This political violence is not a series of isolated incidents and does not emerge organically. Instead, it is a culmination of sophisticated, organized campaigns of targeted intimidation, radicalization, threats, and violence designed to silence opposing speech, limit political activity, change or direct policy outcomes, and prevent the functioning of a democratic society.").

5. "[N]etworks, entities, and organizations that promote organized violence, violent intimidation, conspiracies against rights, and other efforts to disrupt the functioning of a democratic society[;]"[9] or

iii. "[A]nimat[ed]" by any of the following:

**1.** "[A]nti-Americanism," "anti-capitalism," or "anti-Christianity,"

**2.** "[S]upport for the overthrow of the United States Government,"

**3.** "[E]xtremism on migration, race, and gender," and/or

**4.** "[H]ostility towards those who hold traditional American views on family, religion, and morality[.]"[10]

d. **All lists, memoranda, or communications, and any accompanying justification or analysis, prepared or received by the Department of the Treasury identifying nonprofit organizations alleged to be involved in funding or organizing political violence or domestic terrorism.** This request includes, but is not limited to:

i. The "lists" identifying investigation priorities and targets by the Treasury Department referenced by Treasury Secretary Scott Bessent on October 14, 2025 on The Charlie Kirk Show,[11] and any related documents and communications; and

ii. Any lists or analyses created by or provided to the Department of the Treasury identifying "nine liberal groups, donors or fundraising organizations" alleged to have financed or planned protests as reported in the October 9, 2025 article in *Reuters* entitled "Trump's war on the left: Inside the plan to investigate liberal groups," and any related documents and communications.[12]

e. **All documents and communications between, sent to, or received by the Department of the Treasury or any government official, and any related calendar entries or call logs, to or from private parties or members of the public providing names or information about purported members of "Antifa" or "Antifa" "funders," as well as any documents and communications created in response to**

[9] *Id.*

[10] *Id.*

[11] *Sec. Bessent Reveals How They Are Going to Crush Left Wing Extremism*, Youtube (Oct. 14, 2025) https://tinyurl.com/44ncawe9 at 15:41 (regarding "organizations working within our borders," "we [Treasury] have started to compile lists[.]").

[12] Nandita Bose, Jana Winter, Jeff Mason, Tim Reid and Ted Hesson, *Trump's war on the left: Inside the plan to investigate liberal groups*, Reuters (Oct. 10, 2025), https://tinyurl.com/e4ebu98d.

**any such received documents or communications.** This includes, but is not limited to:

i. All documents and communications to, from, with, or about non-governmental parties who participated in President Trump's October 8, 2025 "roundtable on Antifa,"[13] and

ii. All documents and communications received in response to President Trump's request at the October 8, 2025 "roundtable on Antifa" that members of the public provide "the names of any of the funders" of "Antifa."[14]

f. **All documents and communications sent by the Department of the Treasury to any bank or other financial institution, or received by the Department of the Treasury from any bank or other financial institution, and any related calendar entries or call logs, regarding suspected domestic terrorist activity, or any other alleged crimes by philanthropic or nonprofit organizations, as well as any documents and communications created in response to any such documents or communications.** This includes, but is not limited to, all documents and communications related to the "encourag[ement]" to "report 'suspected domestic terrorist activity'" referenced in the October 15, 2025 article in the *Free Press* entitled "Exclusive: Trump Admin Tells Banks to Report 'Domestic Terrorist Activity,"[15] and any and all other directives, memoranda, documents, or communications in any way related to that "encourag[ement.]"

2. In addition to the records requested above, we also request records describing the processing of this request, including records sufficient to identify search terms used and locations and custodians searched, and any tracking sheets used to track the processing of this request. If your agency uses FOIA questionnaires or certifications completed by individual custodians or components to determine whether they possess responsive materials or to describe how they conducted searches, we also request any such records prepared in connection with the processing of this request.

---

[13] *President Trump Participates in a Roundtable on Antifa*, Whitehouse.gov (October 8, 2025) https://tinyurl.com/ypdmwd4a.

[14] *Id*. at 7:36 ("Under the Trump administration, we're going after Antifa criminals and all who fund and support their campaigns are in serious trouble, and we have a lot of records already, a lot of surprises, a lot of bad surprises. It's people that you would never think.") and at 55:48 ("***Do you know the name of any of the funders? Do you know the names? Because if you do, I'd like you to give them to Kash or Pam... or Kristi***") (emphasis added).

[15] Gabe Kaminsky, *Exclusive: Trump Admin Tells Banks to Report 'Domestic Terrorist Activity*, The Free Press (Oct. 15, 2025), https://tinyurl.com/yn3z9cpk ("***An office in the Treasury Department that helps thwart terrorist financing is encouraging banks to report 'suspected domestic terrorist activity,'*** according to two people familiar with the matter who were not authorized to speak publicly.") (emphasis added).

**EXPEDITED PROCESSING**

Protect Democracy Project requests that you expedite the processing of this request pursuant to 5 U.S.C. § 552(a)(6)(E). FOIA provides for expedited processing where a requestor "demonstrates a compelling need." 5 U.S.C. § 552(a)(6)(E)(i). It defines "compelling need" to include situations where a "request [is] made by a person primarily engaged in disseminating information" and there exists an "urgency to inform the public concerning actual or alleged Federal Government activity." *Id*. § 552(a)(6)(E)(v).

This request meets the criteria for expedited processing because there is an "urgency to inform the public concerning actual or alleged Federal Government activity"—namely the targeting and investigation of nonprofit organizations over unsubstantiated allegations of supporting political violence[16] — and because Protect Democracy Project is "primarily engaged in disseminating information."

Courts have found that Protect Democracy "easily" satisfies the criteria for a requester primarily engaged in disseminating information. *Protect Democracy Project v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 298 (D.D.C. 2017); *see Protect Democracy Project v. U.S. Dep't of Just.*, 498 F. Supp. 3d 132, 139 (D.D.C. 2020). As explained below in more detail in the section of this request regarding a fee waiver, the Protect Democracy Project intends to disseminate publicly the information obtained in response to this request.

Moreover, there is an "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E). The reported targeting and investigation of nonprofit organizations for political purposes raises serious concerns about potential retaliation and could have a broad chilling effect on nonprofit activity nationwide. This is a matter of great public interest, particularly for those who depend on nonprofits for essential services, education, and advocacy. Following the issuance of National Security Presidential Memorandum 7 (NSPM-7), numerous nonprofit organizations publicly expressed fears and concerns that the administration could invoke this authority and designation to improperly target or punish entities perceived as opposing the President.[17]

This matter is urgent, and therefore merits expedited processing, because the public must be informed of the government's reported efforts to identify, investigate, and potentially penalize nonprofit organizations based on their perceived political affiliations or activities. "[S]uch media coverage is strong evidence of an 'urgency to inform' the public." *Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 299 (D.D.C. 2017); *see also Washington Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61, 75 (D.D.C. 2006) ("Because the urgency with which the

[16] Nandita Bose, Jana Winter, Jeff Mason, Tim Reid and Ted Hesson, *Trump's war on the left: Inside the plan to investigate liberal groups*, Reuters (Oct. 10, 2025), https://tinyurl.com/e4ebu98d.

[17] *A Coalition of more than 3,700 nonprofit groups condemns Trump Administration's Attacks on Civil Society*, Democracy Defenders Fund (Oct. 1, 2025).

Protect Democracy PROJECT

plaintiff makes its FOIA request is predicated on a matter of current national debate, . . . a likelihood for irreparable harm exists if the plaintiff's FOIA request does not receive expedited treatment."); *Protect Democracy Project, Inc. v. United States Dep't of Just.*, 498 F. Supp. 3d 132, 140 (D.D.C. 2020) (finding urgency in similar circumstances).

Pursuant to 5 U.S.C. § 552(a)(6)(E)(vi), I hereby affirm that the foregoing is true and correct to the best of my knowledge and belief. And pursuant to 5 U.S.C. § 552(a)(6)(E)(ii), I seek your decision to grant or deny expedited processing within 10 calendar days of your receipt of this request.

**FEE WAIVER**

FOIA provides that any fees associated with a request are waived if "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). One of the core missions of Protect Democracy Project, a 501(c)(3) organization, is to inform public understanding of the operations and activities of the government. This request is submitted in furtherance of the organization's mission to gather and disseminate information that is likely to contribute significantly to the public understanding of executive branch operations and activities. Courts have found that Protect Democracy "easily" satisfies the criteria for a requester primarily engaged in disseminating information. *Protect Democracy Project v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 298 (D.D.C. 2017); *see Protect Democracy Project v. U.S. Dep't of Just.*, 498 F. Supp. 3d 132, 139 (D.D.C. 2020). Protect Democracy Project has no commercial interests.

In addition to satisfying the requirements for a waiver of fees associated with the search and processing of records, Protect Democracy Project is entitled to a waiver of all fees except "reasonable standard charges for document duplication." 5 U.S.C. § 552(a)(4)(A)(ii)(II). Federal law mandates that fees be limited to document duplication costs for any requester that qualifies as a representative of the news media. *Id.* Protect Democracy Project is a 501(c)(3) good government organization that qualifies under FOIA as a "representative of the news media." Courts have also held that non-profit public interest groups which disseminate information to the public qualify as "representatives of the news media" for purposes of FOIA's fee reduction provision.[18] The purpose of Protect Democracy Project is to "gather information of potential interest to a segment of the public, use its editorial skills to turn the raw materials into distinct work, and distribute that work to an audience." *See Nat'l Sec. Archive v. U.S. Dep't of Def.*, 880 F.2d 1381, 1387 (D.C. Cir. 1989).

---

[18] *See, e.g., Cause of Action v. IRS*, 125 F. Supp. 3d 145 (D.C. Cir. 2015); *Elec. Privacy Info. Ctr. v. Dep't of Def.*, 241 F. Supp. 2d 5, 10–15 (D.D.C. 2003) (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of the FOIA); *Nat'l Sec. Archive v. Dep't of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989); *Judicial Watch, Inc. v. DOJ*, 133 F. Supp. 2d 52, 53–54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," to be a news media requester).

Protect Democracy PROJECT

Indeed, Protect Democracy Project has routinely demonstrated its ability to disseminate information about its FOIA requests to a wide audience. *See, e.g.*, *Protect Democracy Project, Inc. v. U.S. Dep't of Just.*, 498 F. Supp. 3d at 139 (Protect Democracy Project "listed examples of previous instances when it 'disseminate[d] information about its FOIA requests to a wide audience.'"). Protect Democracy Project will disseminate information and analysis about this request—and any information obtained in response— through, among other places, the website protectdemocracy.org; the protectdemocracy.org Bluesky feed (https://bsky.app/profile/protect democracy.org), which has more than 124,000 followers; a Substack subscriber list of approximately 47,000 people; a LinkedIn page with over 19,000 followers; and by sharing information with other members of the press. Protect Democracy Project should therefore be considered a "representative of the news media" for fee waiver purposes. *See* 5 U.S.C. § 552(a)(4)(A)(ii)(II).

## RESPONSIVE RECORDS

We ask that you search all systems of record, including electronic and paper, in use at your agency, as well as files or e-mails in the personal custody of your employees, such as personal e-mail accounts, as required by FOIA and to the extent that they are reasonably likely to contain responsive records. Protect Democracy Project would prefer records in electronic format, saved as PDF documents, and transmitted via e-mail.

If you make a determination that any responsive record, or any segment within a record, is exempt from disclosure, we ask that you provide an index of those records at the time you transmit all other responsive records. In the index, please include a description of the record and the reason for exclusion with respect to each individual exempt record or exempt portion of a record, as provided by *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). When you deem a portion of a record exempt, we ask that the remainder of the record be provided, as required by 5 U.S.C. § 552(b).

Given the 20-day statutory deadline, 5 U.S.C. § 552(a)(6)(A)(i), we hope to be as helpful as possible in clarifying or answering questions about our request. Please contact me at FOIA@protectdemocracy.org or (202) 579-4582 if you require any additional information. We appreciate your cooperation, and look forward to hearing from you very soon.

Sincerely,

*/s/ Matthew Peney*
Matthew Peney
Impact Associate
Protect Democracy Project
2020 Pennsylvania Ave. NW, Suite #163
Washington, DC 20006
FOIA@protectdemocracy.org | (202) 579-4582